EVERSHARP, Inc.,

v.

UNITED STATES.

No. 593–53.

United States Court of Claims.

Nov. 2, 1954.

William D. Donnelly, Washington, D. C., for plaintiff.

Harland F. Leathers, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues because the Government charged it six percent interest on money which it owed the Government. The plaintiff says it should have been charged only four percent and it sues for the difference.

On August 6, 1946, the War Contracts Price Adjustment Board entered a unilateral order determining that for the year ended December 31, 1944, the plaintiff had realized excessive profits in an amount which required it to repay $304,228.52 to the United States, together with interest at six percent on that sum from August 21, 1946. This type of order, at least as to the principal sum, was authorized by the Renegotiation Act, 56 Stat. 245, frequently amended, and now usually cited as 50 U.S.C.A.Appendix, § 1191.

■ The plaintiff, on November 1, 1946, filed with the Tax Court of the United States a petition for redetermination of the amount of its excessive profits. Under the applicable statute, 50 U.S.C.A.Appendix, § 1191(e) (1), the filing of such a petition did not have the effect of restraining the Government from collecting from the plaintiff the amount of excessive profits unilaterally determined. On April 23, 1947, the plaintiff and the Government entered into an agreement under which the amount claimed by the Government was paid in full by the plaintiff, the last payment being made on July 1, 1948. The agreement provided:

"1. * * * All such payments are agreed to be made, and are made, not voluntarily but under protest. All payments shall be credited first against accrued interest at the rate of six percent per annum and then against principal.

"2. This stipulation or the payments made pursuant thereto shall not prejudice the right of the Magazine Repeating Razor Company [1] to

---

1. The Magazine Repeating Razor Company was the plaintiff's predecessor, to whose interest in this claim the plaintiff succeeded. The word "plaintiff" in this opinion includes both the plaintiff and its predecessor.

recover the same from the United States and shall not in any way affect the substantive rights of the parties or the jurisdiction of the Tax Court of the United States or any other court to hear and decide the controversy and, except as expressly provided, the parties shall be free to take such action as they see fit."

On December 31, 1952, the Tax Court entered its order reducing the amount of plaintiff's excessive profits by $27,930.49. The Government then refunded to the plaintiff that amount of principal, plus the six percent interest which the plaintiff had paid on that amount of principal, plus four percent interest on the sum of the first two items. The four percent interest was paid pursuant to the provisions of the Renegotiation Act of 1951, 65 Stat. 23, 50 U.S.C.A. Appendix, § 1231(f). The total repayment to the plaintiff was $37,180.26. The plaintiff cashed the check, but by letter informed the Government that it denied the Government's right to charge and keep six percent interest on the balance of the principal of the excessive profits. It said that the Government should have charged only four percent interest, and that it should have refunded two percent of the six percent interest which the Government had received from plaintiff on the $276,298.03 of excessive profits, that being the principal amount finally determined to be correct, and should pay interest at four percent on the additional refund as required by 50 U.S.C.A.Appendix, § 1231(f).

The Renegotiation Act, as it was when the plaintiff, in 1947 and 1948, paid the six percent interest here in question, said nothing about interest to be charged by the Government when it had determined that there were excessive profits and had ordered their repayment. It provided that the Government might collect them by offset or by suit or both, 50 U.S.C.A.Appendix, § 1191(c) (2). The statute being silent as to interest, the War Contracts Price Adjustment Board had promulgated a regulation, published in the Federal Register, 10 F.R. 1009, January 26, 1945, providing that interest at six percent should accrue on excessive profits.

The Government challenges our jurisdiction to entertain this suit. The plaintiff asserts that we have jurisdiction under 28 U.S.C. § 1491(2, 3) because its claim is founded upon an Act of Congress, and a regulation of an executive department. The Government says that the Act of Congress to which the plaintiff points is silent on the question of interest, and that the regulation to which the plaintiff points directly contradicts the plaintiff's claim. The plaintiff says, in effect, that the regulation under which the six percent interest was collected was void as beyond the powers of the Board which promulgated it, and that, disregarding the regulation, the Act of Congress, the Renegotiation Act, when properly interpreted, authorizes the collection by the Government of interest at a reasonable rate, and no more.

We assume, for the moment, that the six percent regulation is void. The Government collected the six percent interest on the assumed authority of the void regulation. The case is then comparable to Carriso, Inc., v. United States, 9 Cir., 106 F.2d 707, where the Collector of Customs had collected fees from the plaintiff under the supposed authority of a statute which had, in fact, been repealed. The court sustained the claim, apparently as one founded upon an Act of Congress. See also Ross Packing Co. v. United States, D.C., 42 F.Supp. 932. If a repealed statute, or an *ultra vires* Labor Board order is a sufficient basis for Tucker Act jurisdiction, we suppose that a published and currently enforced regulation of an executive department, though void, is likewise a sufficient basis. We further think that, if the plaintiff is right in its interpretation of the Renegotiation Act, and that Act does contemplate the collection of interest at a reasonable rate, and six percent interest is unreasonable, the plaintiff's claim is founded upon the misinterpretation and misapplication of an Act of Con-

gress. See Clapp v. United States, 117 F.Supp. 576, 127 Ct.Cl. 505, certiorari denied, 1954, 75 S.Ct. 55. Our conclusion is that we have jurisdiction.

The plaintiff contends that the six percent regulation is void. If we were considering the question as an original one, we might be in doubt as to the answer. Judge Goodrich's opinion in United States v, Philmac Mfg. Co., 3 Cir., 192 F.2d 517, seems to us to have much to command it. But all the other decisions, and they are numerous, are to the contrary, and hold the regulation void. As a consequence, the rates of interest vary from judicial district to judicial district, from two and one-half percent to six percent. The cases are cited and some of them are discussed in Judge Nordbye's opinion in United States v. Ring Construction Co., D.C. Minn., 113 F.Supp. 217, affirmed, 8 Cir., 209 F.2d 668. We bow to the overwhelming weight of authority and hold the six percent regulation invalid.

We think that, the regulation being eliminated, the plaintiff's contention for a four percent rate of interest is reasonable. That is the rate which the Government pays on over-collections of excess profits in these renegotiation cases, 50 U.S.C.A.Appendix, § 1231(f). It is the rate fixed by Congress in 1951, 65 Stat. 13, 50 U.S.C.A.Appendix, § 1215(b) (2) to be thereafter collected from contractors on unpaid renegotiation debts. The Government does not pay as much as four percent for the money that it borrows.

The Government urges that the plaintiff is barred from recovery by its voluntary payment of the money here sought to be recovered. We think that the rights of the plaintiff were preserved by the agreement of the parties, quoted earlier in this opinion. After the payment by the plaintiff pursuant to the agreement, it litigated the question of the principal amount, in the Tax Court, and was awarded a reduction of principal. The Tax Court held that it had no jurisdiction to pass on the question of inter-

est. The plaintiff then sued here to recover the allegedly excessive interest. We think it is not barred from doing so.

The Government's motion to dismiss the petition is denied.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER, and LITTLETON, Judges, concur.