**GENERAL ANILINE & FILM CORPORATION**
v.
**The UNITED STATES.**
**No. 389–64.**

United States Court of Claims.
May 13, 1966.

---

Albert J. Klein, New York City, for plaintiff. Arthur M. Laufer, New York City, attorney of record. Manes, Sturim & Laufer, New York City, of counsel.

Edward J. Friedlander, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before LARAMORE, Acting Chief Judge, WHITAKER, Senior Judge, and DAVIS and COLLINS, Judges.

WHITAKER, Senior Judge:

Plaintiff sues for a net renegotiation rebate of excessive profits to which it claims it is entitled for the years 1942, 1943, and 1944, by reason of accelerated amortization of wartime facilities allowed by the Commissioner of Internal Revenue under the Renegotiation Act, 58 Stat. 80 (1944), as amended, 50 U.S.C.App. § 1191(a) (4) (D) (1964). Defendant moves to dismiss plaintiff's petition on two grounds: (1) that this court has no jurisdiction over plaintiff's claim, exclusive jurisdiction having been conferred on the Tax Court, and (2) the claim is barred by the statute of limitations.

Plaintiff submitted a claim on August 19, 1946, for a net renegotiation rebate, but, since at this time the Commissioner of Internal Revenue had not computed the accelerated amortization to which plaintiff was entitled, the claim could not be accompanied by his recomputation, as required by section 1607.736–1 of the regulations of the War Contracts Price Adjustment Board. 10 Fed.Reg. 13643 (1945). For this reason, the Secretary of the Board returned the claim to plaintiff on August 22, 1946, with the suggestion that it resubmit the claim after it had received from the Commissioner of Internal Revenue the required recomputation.

Plaintiff did not resubmit its claim nor was any further action taken by it until after it had received the recomputation from the Commissioner of Internal Revenue, which was in 1962. It then forwarded this recomputation to the Administrator of General Services (who had succeeded to the functions of the War Contracts Price Adjustment Board), with a request that action be taken on its claim. General Services replied that it had no record of plaintiff's having filed such a claim (plaintiff's claim having been returned to it, as stated above), and that proof was required that it had done so prior to December 31, 1952.

Plaintiff was unable to find a copy of its original claim and therefore submitted a new claim in July 1964. Its letter of transmittal read as follows:

We attach herewith duplicate originals of the claims filed in the above matter under date of August 19, 1946.

The statements contained in the claims are hereby adopted by this company and refiled to substitute for the original claims filed with the War Contracts Price Adjustment Board on August 19, 1946 which claims have

been inadvertently destroyed, lost or misplaced.

The Administrator of General Services rejected the claim on August 27, 1964, because he was precluded by law from approving the said claims as they were filed subsequent to December 31, 1952, the final date for filing under the Renegotiation Act of March 23, 1951, 65 Stat. 23, as amended, 66 Stat. 753 (1952), 50 U.S.C.App. § 1191(a) (4) (D) (1964). Plaintiff did not take an appeal to the Tax Court, nor did it further prosecute its claim until the filing of its petition in this court.

Although the Renegotiation Act of 1951, as amended, required that a claim for a rebate be filed by December 31, 1952, section 201(c), 65 Stat. 23, 50 U.S.C.App. § 1191(a) (4) (D) (1964), thereof provided:

A claim shall be deemed to have been filed when received by the Board or the Administrator, whether or not accompanied by a statement of the Commissioner of Internal Revenue showing the amortization deduction allowed for the renegotiated year upon the recomputation made pursuant to section 124(d) of the Internal Revenue Code. [Int.Rev.Code of 1939, § 124(d), added by ch. 757, § 302, 54 Stat. 999 (1940), as amended, ch. 619, § 155, 56 Stat. 849 (1942).]

Plaintiff's claim filed in July 1962 was of course too late, and the Administrator of General Services was evidently of opinion that the claim filed by plaintiff on August 19, 1946, but returned to it, did not come within the purview of the above quotation from the Act of March 23, 1951. Whether or not he was correct in this is not for us to decide, because it was a claim for the rebate of excessive profits and exclusive jurisdiction to review the action of the administrative agency with respect to the determination of "the amount of excessive profits" is conferred on the Tax Court by 58 Stat. 86 (1944), 50 U.S.C.App. § 1191(e) (1) (1964). This section reads:

Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the mailing of the notice of such order under subsection (c) (1) [of section 1191], file a petition with The Tax Court of the United States for a redetermination thereof. Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency. * * *

Whether or not a claim for a rebate of excessive profits was filed on time, of course, directly affects the determination of excessive profits.

That plaintiff's claims of August 19, 1946, resubmitted on July 14, 1964, were claims for a rebate of excessive profits as previously determined needs no argument. Its claim for the fiscal year 1943, which is typical of its claims for the three years, reads in part:

In accordance with W30–053 AC PAS #985 dated January 17, 1945 executed on behalf of the United States by the Chairman, War Department Price Adjustment Board, and determining excessive profits pursuant to the Renegotiation Act, the undersigned has eliminated $1,906,700 of excessive profits for its fiscal year ended December 31, 1943.

Upon a recomputation of the amortization deduction pursuant to section 124(d) of the Internal Revenue Code in connection with the determination of the Federal taxes of the undersigned for said fiscal year there was an increase of $169,846.86 in the total amount of the amortization deduction for said fiscal year.

The undersigned therefore claims a net renegotiation rebate for said fiscal

year in accordance with subsection (a) (4) (D) of the Renegotiation Act, and the regulations promulgated thereunder by the War Contracts Price Adjustment Board and in support of such claim submits herewith the following documents:

In short, plaintiff claims that the increase in the amount of the amortization deduction will result in a reduction in the amount of its excessive profits and, therefore, it claims a rebate of a part of the amount thereof as previously determined.

Section 1191(e) (1), supra, prescribes plaintiff's remedy if it was aggrieved by the action of the Board disallowing its claims. That statutory remedy was an appeal to the Tax Court. Only the Tax Court was given jurisdiction to review the action of the Board (or of its successor, the Administrator of General Services). It was therefore the function of the Tax Court to determine whether or not plaintiff had filed its claim for a rebate in time, which was to be determined by the answer to the question of whether the document which plaintiff attempted to file on August 19, 1946, came within the terms of the above-quoted excerpt from the Act of March 23, 1951.

Not only was the Tax Court given jurisdiction to determine such a question, but its jurisdiction to do so was "exclusive." In order to make assurance doubly sure, the act went on to say that the "determination [of the Tax Court] shall not be reviewed or redetermined by any court or agency."

Plaintiff failed to take an appeal to the only court or agency which had jurisdiction to review the action of the agency.

This decision is in harmony with the decision of the United States Court of Appeals for the District of Columbia Circuit in R. G. LeTourneau, Inc. v. Administrator of General Services, 96 U.S. App.D.C. 326, 226 F.2d 48 (1955), and cases there cited.

Eversharp, Inc. v. United States, 125 F.Supp. 244, 129 Ct.Cl. 772 (1954), and Putnam Tool Co. v. United States, 147 F.Supp. 746, 137 Ct.Cl. 183, cert. denied, 355 U.S. 825, 78 S.Ct. 33, 2 L.Ed.2d 39 (1957), cited by plaintiff, are not in point; neither was a suit to recover an overpayment of excessive profits, but both were for excess interest charged on the excessive profits.

In the light of our holding that we have no jurisdiction, it is unnecessary to consider defendant's second ground of its motion to dismiss, to wit, that plaintiff's claim is barred by the statute of limitations.

It results that defendant's motion to dismiss the petition must be granted, and plaintiff's petition is dismissed.